**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **TAMMY MICHELLE HARRIS BUTTS,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION NO. 20-00068-B** |
| | * | |
| **ANDREW M. SAUL,** | * | |
| **Commissioner of Social** | * | |
| **Security,** | * | |
| | * | |
| **Defendant.** | * | |

<u>**ORDER**</u>

Plaintiff Tammy Michelle Harris Butts (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. On September 30, 2020, the parties consented to have the undersigned Magistrate Judge conduct any and all proceedings in this case. (Doc. 16). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 19). Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.  **Procedural History**[1]

Plaintiff filed her application for benefits on February 10, 2017.  (Doc. 10 at 174).  She alleged disability beginning September 24, 2016, based on back problems.  (Id. at 174, 199, 203).  Plaintiff's application for benefits was denied at the initial stage.  (Id. at 70).  Upon timely request, she was granted an administrative hearing, which was held on March 26, 2019.  (Id. at 36, 77, 129).  Plaintiff attended the hearing with her counsel and provided testimony related to her claims.  (Id. at 38-49, 55).  A vocational expert (hereinafter "VE") also testified at the hearing.  (Id. at 49-55).  On April 19, 2019, the Administrative Law Judge (hereinafter "ALJ") issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 20-31).  The Appeals Council denied Plaintiff's request for review on December 9, 2019.  (Id. at 5).  Therefore, the ALJ's decision dated April 19, 2019, became the final decision of the Commissioner.  (Id.).

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

## II.   Issues on Appeal

    A. Whether the ALJ erred in his assessment of the opinions of Plaintiff's treating orthopedic surgeon and the non-examining State agency medical reviewer?

    B. Whether substantial evidence supports the ALJ's finding that Plaintiff's lumbar impairments do not meet or equal Listing 1.04A?

## III. Factual Background

Plaintiff was born on August 17, 1968 and was fifty years of age at the time of her administrative hearing on March 26, 2019. (Doc. 10 at 38, 199).  Plaintiff has a high school diploma and attended college but did not attain a degree.  (Id. at 40). Plaintiff worked as a winder tech at a paper mill from 2009 until her alleged disability onset date of September 24, 2016.  (Id. at 40, 223-24).  Before that, she worked as a cook, waitress, industrial supervisor, and administrative assistant.  (Id. at 223, 225-28).

Plaintiff testified that she can no longer work because of chronic pain, numbness, and burning across both of her hips and legs.  (Id. at 40-41).  Plaintiff has undergone three lower back surgeries.  Her first surgery was performed in June 2015, prior to her alleged onset date, and her second and third surgeries were performed after the alleged onset date, in January 2017 and December 2017, respectively.  (See id. at 335, 376, 500). Plaintiff has also received injections, medication, and physical

therapy for her lower back issues.  (See, e.g., id. at 291, 297, 354).

IV.  **Standard of Review**

In reviewing claims brought under the Social Security Act, this Court's role is a limited one.  The Court's review is limited to determining (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the correct legal standards were applied.[2]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991).  "Substantial evidence is more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence both favorable and unfavorable to the Commissioner's decision.  Chester v. Bowen, 792 F.2d 129,

---

[2] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163, at *4 (S.D. Ala. June 14, 1999).

**V.   <u>Statutory and Regulatory Framework</u>**

An individual who applies for Social Security disability benefits must prove her disability.   20 C.F.R. § 404.1512. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A); <u>see also</u> 20 C.F.R. § 404.1505(a).   The Social Security regulations provide a five-step sequential evaluation process for determining whether a claimant has proven her disability.   <u>See</u> <u>id.</u> at § 404.1520.

The claimant must first prove that she is not engaged in substantial gainful activity.   <u>Carpenter v. Comm'r of Soc. Sec.</u>, 614 F. App'x 482, 486 (11th Cir. 2015) (per curiam).[3]   The second step requires the claimant to prove that she has a severe impairment or combination of impairments.   <u>Id.</u>   If, at the third step, the claimant proves that the impairment or combination of

---

[3] Federal Appendix cases are unpublished Eleventh Circuit opinions and are not considered binding precedent, but they may be cited as persuasive authority.   11th Cir. R. 36-2; <u>Henry v. Comm'r of Soc. Sec.</u>, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. Id. If the claimant cannot prevail at the third step, the ALJ must determine the claimant's residual functional capacity ("RFC") before proceeding to step four. Id. A claimant's RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite her impairments. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

Once a claimant's RFC is determined, the evaluation proceeds to the fourth step, where the claimant must prove an inability to perform her past relevant work. Carpenter, 614 F. App'x at 486. If a claimant meets her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's RFC, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985) (per curiam). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the burden then shifts back to the claimant to prove her inability to perform those jobs in order to be found disabled. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

## VI.  **The ALJ's Findings**

In the case *sub judice*, the ALJ found that Plaintiff has the severe impairment of degenerative disc disease of the lumbar spine status post discectomy, revision of laminotomy with discectomy and fusion at L5-S1, and the non-severe impairments of asthma and major depressive disorder.  (Doc. 10 at 23-24).   The ALJ found that Plaintiff's impairments, when considered individually and in combination, do not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  (Id. at 24-25).  The ALJ further found that Plaintiff has the RFC to perform a range of light work, with the following additional limitations: she can occasionally climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she can frequently balance; she can occasionally stoop, kneel, crouch, and crawl; she must avoid concentrated exposure to extreme heat, extreme cold, vibration, and pulmonary irritants such as fumes, odors, dust, gases, and poor ventilation; and she must avoid all exposure to hazards such as moving machinery, moving mechanical parts, and unprotected heights.  (Id. at 25).  Based upon the testimony of the VE, the ALJ determined that Plaintiff is unable to perform her past relevant work as a winder helper but can perform other jobs that exist in significant numbers in the national economy, such as garment sorter, folder, and information clerk.  (Id. at 29-31).

Thus, the ALJ concluded that Plaintiff is not disabled.  (Id. at 31).

## VII. **Discussion**

### A. Substantial evidence supports the ALJ's evaluation of the medical opinion evidence.

Plaintiff argues that the ALJ erred in discounting certain opinions of her treating orthopedic surgeon, Timothy Holt, M.D., while according great weight to the opinion of Robert G. Haas, M.D., the non-examining State agency medical reviewer, that Plaintiff is capable of performing work at the light exertional level with postural and environmental restrictions.  (Doc. 13 at 4-15, 17-19).  The Commissioner counters that the ALJ's articulated reasons for rejecting the exertional limitations set forth by Dr. Holt are supported by substantial evidence and amount to good cause, and that the ALJ did not err in according Dr. Haas's opinion great weight because it was consistent with the record as a whole. (Doc. 14 at 4-9, 13-14).

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians.  The ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating relationship with the claimant; (3) the medical evidence and

explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's specialization.  Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (per curiam) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).  While "the ALJ is not required to explicitly address each of those factors[,]" Lawton v. Comm'r of Soc. Sec., 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam), the ALJ must specify the weight given to different medical opinions and the reasons for doing so.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).

"Generally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (per curiam).  "The ALJ must give a treating physician's opinion 'substantial or considerable weight unless good cause is shown to the contrary.'" Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259 (11th Cir. 2019) (per curiam) (quoting Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004)).  Good cause to discredit a treating physician's testimony "exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3)

the treating physician's opinion was conclusory or inconsistent with his or her own medical records." Id. "[T]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician." Id. "The failure to do so is reversible error." Id.

In contrast, "[t]he opinions of nonexamining, reviewing physicians, . . . when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam). Therefore, a non-examining physician's opinion does not constitute the good cause needed to reject the opinion of a treating physician. Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). "Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding." Sharfarz, 825 F.2d at 280. "Thus, '[i]f an ALJ has shown good cause to reject the opinion of a treating or examining physician, the ALJ may then properly rely on the opinion of a non-examining medical source if it is consistent with the objective evidence of record.'" Smith v. Berryhill, 2018 U.S. Dist. LEXIS 185494, at *15, 2018 WL 5624267, at *7 (S.D. Ala. Oct. 30, 2018) (quoting Ethridge v. Berryhill, 2017 U.S. Dist. LEXIS 174883, at *11-13, 2017 WL 4780619, at *5 (M.D. Ala. Oct. 23, 2017) (citing cases)).

**Dr. Holt's Opinion**

On March 21, 2019, Plaintiff's treating orthopedic spine

10

surgeon, Dr. Holt, completed an Estimated Functional Capacities
Form, in which he opined that Plaintiff could occasionally (but
not frequently) lift and carry up to twenty pounds; never lift or
carry more than twenty pounds; and sit, stand, and walk for two
hours each in an eight-hour workday.  (Doc. 10 at 635).  Dr. Holt
indicated that Plaintiff could never bend, squat, or crawl, but
could occasionally climb and reach above shoulder level.  (Id.).
Dr. Holt also indicated that Plaintiff could use both hands for
repetitive actions such as simple grasping, pushing and pulling,
and fine manipulation, and could use both feet for repetitive
movements such as operating foot controls, albeit with limited
pressure.  (Id.).  He further opined that Plaintiff was totally
unable to work at unprotected heights; moderately restricted in
her abilities to work around moving machinery and drive automotive
equipment; and mildly restricted in her abilities to be exposed to
marked changes in temperatures and humidity and to dust, fumes,
and gases.  (Id. at 635-36).

The ALJ summarized the opinions in Dr. Holt's medical source
statement and accorded significant weight to Dr. Holt's postural
and environmental restrictions.  (Id. at 28-29).  However, the ALJ
found Dr. Holt's opinion that Plaintiff could only sit, stand, and
walk for two hours each in an eight-hour workday to be unsupported
by the objective medical evidence or imaging studies, and he stated
that "the evidence showing no neurological deficit, normal gait

and station do not support [Dr. Holt's] exertional limitations."
(Id. at 29).

***Dr. Haas's Opinion***

On March 17, 2017, Dr. Haas, the non-examining State agency
medical consultant, completed a Physical RFC Assessment based on
his review of the records then available.  With regard to
Plaintiff's exertional limitations, Dr. Haas opined that Plaintiff
could lift and/or carry up to twenty pounds occasionally and up to
ten pounds frequently; stand and/or walk for a total of about six
hours in an eight-hour workday; sit for a total of about six hours
in an eight-hour workday; and was unlimited in her abilities to
push and pull, except for the stated lift/carry limitations.  (Id.
at 64).  As to postural limitations, Dr. Haas stated that Plaintiff
could occasionally climb ramps and stairs; could never climb
ladders, ropes, or scaffolds; and could occasionally stoop, kneel,
crouch, and crawl.  (Id.).  Dr. Haas also opined that Plaintiff
could not have concentrated exposure to extreme cold, extreme heat,
vibration, or hazards such as machinery or heights.  (Id. at 65).
After stating that Dr. Holt's exertional limitations were not
supported by the evidence, ALJ afforded "great weight to the
opinion of [Dr. Haas] that [Plaintiff] could perform light exertion
with postural and environmental restrictions."  (Id. at 29).

*Whether Substantial Evidence Supports the ALJ's Decision to Discount the Opinions of Dr. Holt Regarding Plaintiff's Exertional Limitations*

As noted previously, the ALJ rejected the exertional limitations set forth by Dr. Holt, finding them unsupported by the objective medical evidence or imaging studies, including "the evidence showing no neurological deficit, normal gait and station[.]" (Id.). This justification clearly falls within the category of good cause required to discount the opinion of a treating physician. See Schink, 935 F.3d at 1259. However, Plaintiff contends that the ALJ's rationale is pretextual and unsupported by substantial evidence, because Dr. Holt's opinion is consistent with the surgeries performed on Plaintiff, her positive physical examination findings, and MRI and x-ray results. Indeed, Plaintiff submits that Dr. Haas's assessment is the *only* evidence in the record that is inconsistent with Dr. Holt's opinions. (Doc. 13 at 11-15).

The record reflects that Plaintiff complained of lower back pain radiating into both legs during visits to MedCenter Demopolis in May and June 2015. (Doc. 10 at 288, 292, 295). Physical examinations revealed tenderness in the lumbar spine and positive straight leg raise bilaterally. (Id. at 289, 293, 296). An MRI of Plaintiff's lumbar spine on June 11, 2015 revealed multi-level degenerative disease and a large paracentral disc protrusion at L5-S1 exerting mass effect on the left S1 nerve root. (Id. at

298).

Plaintiff presented to orthopedic surgeon Todd Volkman, M.D. the next day. (Id. at 337). She reported difficulty with transitioning due to discomfort in the left buttock and tenderness over the left sacroiliac ("SI") region, but no right-sided discomfort. (Id.). On examination, Plaintiff's lumbar flexion and extension were limited due to discomfort; she could sustain stance on her toes and heels and single stand without Trendelenburg; and she had a negative straight leg raise on the right but a markedly positive straight leg raise on the left. (Id.). Plaintiff indicated that she wished to undergo surgery, and Dr. Volkman performed a left L5-S1 laminotomy and discectomy without complication on June 15, 2015. (Id. at 335, 337).

At a follow-up visit on June 24, 2015, it was noted that Plaintiff was ambulating well, and Plaintiff reported that her leg pain was gone and that she was having some mild soreness in her lower back but overall felt very well. (Id. at 340). On July 15, 2015, Dr. Volkman noted that Plaintiff's preoperative symptoms had resolved, and that Plaintiff was doing very well, feeling very good, and was very happy. (Id. at 342). Dr. Volkman also noted that Plaintiff was walking three to four miles daily, and he instructed her to gradually increase her activities. (Id.). On August 5, 2015, Plaintiff continued to report no leg pain but did report some soreness in the back, which Dr. Volkman stated was

14

"not unexpected." (Id. at 343).  Three weeks later, Dr. Volkman again noted that Plaintiff was doing well and that her preoperative symptoms had resolved, and he cleared her to return to full duty work on August 31, 2015. (Id. at 345).

At a visit to MedCenter Demopolis on September 20, 2015, Plaintiff exhibited full range of motion in her back, negative straight leg raise, and no tenderness to palpation. (Id. at 300). During a primary care visit on June 24, 2016, it was noted that Plaintiff's gait and station appeared grossly normal, she moved all extremities well with full range of motion, and no focal neurological deficit was appreciated. (Id. at 262).

Later, on September 30, 2016, Plaintiff presented to MedCenter Demopolis complaining of lower back pain radiating down her left leg, which she said had started one week earlier. (Id. at 316).  On examination, Plaintiff's had full range of motion, negative straight leg raise, and her back was nontender to palpation, but she reported pain with palpation along her left buttock and pain and numbness down her leg. (Id. at 317).

Plaintiff returned to Dr. Volkman on October 3, 2016, who stated that she had done well postoperatively but had recently started having back and leg symptoms, which gradually worsened and were not relieved by medication. (Id. at 351).  Dr. Volkman noted that radiographs of Plaintiff's lumbar spine demonstrated maintained lordosis with disc space narrowing at L5-S1 and a slight

15

listhesis at L4-L5.   (Id.).   On examination, Plaintiff had a positive straight leg raise on the left and complained of significant left-sided pain.   (Id.).   Dr. Volkman attempted to order an MRI, which was denied by Plaintiff's insurance company until Plaintiff had first tried medication and physical therapy. (Id. at 351, 368).

On November 17, 2016, Plaintiff presented to Dr. Holt for a second opinion.   (Id. at 367).   She complained of lower back pain, bilateral buttock pain, and pain in both legs.   (Id.).   Plaintiff told Dr. Holt that she had reinjured her back at work on September 23, 2016, and that she did not mention the injury that day but instead informed her employer about a week later after she noticed that the pain was not improving and, if anything, was getting worse.   (Id. at 368).   She also reported that she had done physical therapy for one day but was unable to continue after it exacerbated her symptoms.   (Id.).

On examination, Dr. Holt noted that Plaintiff "may have a little bit of weakness on the left especially on extension of the great toe and plantar flexion"; had "strongly positive" Cram, Lasegue, and straight leg raising tests on the left; had a "somewhat positive" femoral stretch; had a positive contralateral straight leg raise; and had trace/4 deep tendon reflexes and no crossed adductor.   (Id. at 368-69).   Dr. Holt also noted that x-rays showed early degenerative changes in the SI joints and lumbar

spine; collapse at L5-S1; anterolisthesis of L4 on L5; and "a slip at the L4-5 level" on flexion and extension. (Id. at 369).

Plaintiff finally underwent a second lumbar spine MRI on December 1, 2016, which showed a recurrent L5-S1 left disc herniation compressing the left S1 nerve root. (Id. at 371). Plaintiff returned to Dr. Holt to review her MRI that day. (Id. at 365). On examination, Plaintiff's straight leg raising, Cram, and Lasegue tests remained positive, and she showed some weakness on plantar flexion, being at about 4+/5 as compared to relatively normal strength originally. (Id. at 366). Plaintiff indicated that she would like to proceed with surgery. (Id.). She presented to Dr. Holt for a preoperative exam on January 16, 2017, and a lumbar spine x-ray was performed, which revealed mild anterior spondylosis and mild convex right curvature at L2, but normal disc and vertebral body height and no acute traumatic, inflammatory, or neoplastic changes. (Id. at 363, 370).

Dr. Holt performed an inpatient left L5-S1 revision laminotomy with discectomy on January 23, 2017. (Id. at 376). During a post-surgery consultation the following day, Plaintiff demonstrated full range of motion and bilateral strength, and her fine and gross motor function appeared to be intact. (Id. at 373). Dr. Holt noted that Plaintiff had done well postoperatively, her leg pain was resolved, and she was intact neurologically, and Plaintiff was discharged from the hospital. (Id. at 375).

On January 31, 2017, Plaintiff presented to Dr. Holt for a wound check and stated that she was feeling well with minimal pain. (Id. at 361). However, at a subsequent visit to Dr. Holt on February 23, 2017, Plaintiff reported that she had "been pretty much asymptomatic" after her surgery but had "felt a pop in her back" one day, at which time she began experiencing lower back pain radiating down both legs. (Id. at 467-68). Dr. Holt noted that x-rays showed instability at the L4-L5 and L5-S1 levels. (Id. at 468). Dr. Holt further stated that he would send Plaintiff to physical therapy, although he didn't believe it would help with her inherent instability, and that he would like to arrange a fusion at the L5-S1 level, and possibly the L4-L5 level as well. (Id.).

Plaintiff was scheduled for surgery on April 17, 2017, but it was put on hold because her insurance company required that she first try physical therapy. (Id. at 517). On August 10, 2017, Plaintiff returned to Dr. Holt for a follow-up after nine weeks of physical therapy. (Id. at 509-10). She reported that physical therapy had helped "a little" but she was still having lower back pain radiating down both legs and burning and stinging in both feet. (Id. at 509). On examination, Plaintiff had pain on extension past neutral, her forward flexion was about 50-60 degrees, her Cram and Lasegue tests were positive, and she had no clonus and normal Babinski sign. (Id. at 510). Dr. Holt

recommended a fusion at L5-S1 and L4-L5, and Plaintiff indicated that she wished to go forward with the surgery. (Id.).

On December 18, 2017, Plaintiff presented to her primary care physician, Ronnie T. Chu, M.D., for presurgical clearance. (Id. at 578-79). On examination, Dr. Chu noted that Plaintiff moved all extremities well with full range of motion, her gait and station appeared grossly normal, and no focal neurological deficit was appreciated. (Id. at 578). A preoperative lumbar spine x-ray on December 20, 2017 revealed minimal discogenic change at L4-L5 and L3-L4, intact SI joints, and accentuation of the lumbar lordosis, and it was noted that there was no significant change from the study performed on January 16, 2017. (Id. at 545).

On December 27, 2017, Dr. Holt performed a posterior segmental instrumentation and posterolateral fusion at L4-L5 and L5-S1, and L4 laminectomy with foraminotomies. (Id. at 500). The next day, Dr. Holt noted that Plaintiff had done well postoperatively and was intact neurologically, and she was discharged from the hospital. (Id. at 499). At a wound check on January 10, 2018, Plaintiff reported that she was doing well except for surgical pain, which was worse at night. (Id. at 503). On February 8, 2018, Plaintiff told Dr. Holt that she was eighty to ninety percent improved from her preoperative level. (Id. at 562). Dr. Holt noted that Plaintiff was intact neurologically, and that x-rays showed the rod and screw device in good position at L4-L5 and L5-

S1, but "a little bit of slip" at L3-L4. (Id.). Dr. Holt prescribed a muscle relaxer, decreased Plaintiff's pain medications, and prescribed physical therapy. (Id.).

A physical therapy recertification note dated April 4, 2018 stated that Plaintiff was more mobile and was ready to get back to regular activities, and that Plaintiff reported 0/10 pain on arrival and fifty percent improvement since beginning therapy. (Id. at 565). It was noted that Plaintiff had been having muscle cramps in her diaphragm, lower back, and legs, but that the cramps had mostly subsided. (Id.). It was also noted that Plaintiff was not allowed to sit in recliners, "and if sitting for long rides [Plaintiff] must take 20 min[utes] walk." (Id.).

Plaintiff presented to Dr. Holt for a follow-up on April 5, 2018. (Id. at 559). Dr. Holt noted that Plaintiff had "done great in therapy" but was still having trouble sitting for any amount of time. (Id. at 559-60). He also noted that Plaintiff reported overall ninety percent improvement since her surgery and that she was intact neurologically. (Id. at 560). Dr. Holt stated that Plaintiff would continue therapy for six more weeks. (Id.).

On August 2, 2018, Plaintiff returned to Dr. Holt and reported that she was still having some lower back pain, pain radiating into her left tailbone, and numbness in her legs and feet, but was about seventy percent improved from her preoperative level. (Id. at 590-91). On examination, Plaintiff had positive thigh thrust,

lateral compression, Gaenslen, Faber, and Fortin tests.  (Id. at 591).  Dr. Holt stated that he believed Plaintiff's primary problem was now her SI joints, he explained that the next step would be to try SI joint injections, which the record suggests Plaintiff may have received in September 2018.  (See id. at 591, 599).

Plaintiff presented to Dr. Chu for a wellness physical on September 27, 2018, and the record from that visit reflects no complaints or diagnoses relating to her lower back.  (See id. at 605-07).  On examination, Dr. Chu noted that Plaintiff's gait and station appeared grossly normal, and he found no focal neurological deficit.  (Id. at 605).

Plaintiff again saw Dr. Chu on February 19, 2019, now complaining of depression and anxiety, which she stated had gotten significantly worse over the past two months.  (Id. at 618).  Plaintiff reported that she had "anger from 3 failed back surgeries because she has been told she can no longer work."  (Id.).  On examination, Dr. Chu noted that Plaintiff's gait and station appeared grossly normal, she moved all extremities well with full range of motion, and no focal neurological deficit was appreciated.  (Id.).  Dr. Chu also noted that Plaintiff had a prescription to take Gabapentin three times per day but was only taking the medication twice a day, and he encouraged her to take the medication as it was prescribed rather than as needed.  (Id. at 619).

On February 28, 2019, Plaintiff returned to Dr. Holt and reported that she was still having lower back pain radiating down both legs into her feet, as well as occasional numbness and burning in her buttocks, legs, and feet.  (Id. at 630).  Dr. Holt noted that Plaintiff "had been doing quite well until about a month ago[,]" when she began having increasing radiating pain in her lower extremities.  (Id. at 631).  A physical examination demonstrated positive Fortin, thigh thrust, lateral compression, Gaenslen, and Faber tests bilaterally; positive straight leg raising, Cram, and Lasegue tests bilaterally; and no clonus and normal Babinski sign.  (Id.).  A review of Plaintiff's x-rays showed that the rod and screw device was still in good position and there was excellent bone graft in the posterolateral gutters, but the SI joints were sclerotic and there was a little bit of degeneration above the level of her fusion.  (Id.).  Dr. Holt recommended another lumbar spine MRI and, if that was negative, possible SI joint injections to confirm the source of Plaintiff's pain.  (Id.).  He stated: "I think this is adjacent level disease." (Id.).

In his decision, the ALJ discussed the medical record evidence in great detail, along with Plaintiff's reports and testimony regarding her activities and abilities.  (See id. at 23-29).  After stating that he accorded "significant weight" to Dr. Holt's opinions regarding Plaintiff's postural and environmental

restrictions, the ALJ stated that Dr. Holt's opinions regarding Plaintiff's exertional limitations were not supported by the objective medical evidence or imaging studies, and he explained this finding as follows:

> The claimant did have revision of her laminotomy at L5-S1 in January 2017 and fusion in December 2017. She was limited on post-op visit to no excessive walking or sitting or lifting two pounds. However, by February and April 2018 she reported she did have 80-90% improvement. The examination showed she was neurologically intact. Imaging showed good position of her rod and screws with a little slip at L3-4. It was noted in February 2019 that she had been doing quite well until a month ago. Imaging showed her rod and screw in good position. There was excellent bone graft in the posterolateral gutters and SI joint was sclerotic. There was only a little bit of degenerative [sic] above the level of her fusion. Her allegations that she could no longer work are not consistent with her reported improvement and imaging studies. Moreover, it was noted during evaluations with Dr. Chu that she had no neurological deficits. Her gait and station appeared normal.
>
> Accordingly, I accord significant weight to Dr. Holt regarding his nonexertional limitations. However, the evidence showing no neurological deficit, normal gait and station do not support his exertional limitations.

(Id. at 29) (internal record citations omitted).

A court must affirm an ALJ's decision if there exists "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Winschel, 631 F.3d at 1178. Moreover, it is not for the court to "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." Bloodsworth, 703 F.2d at 1239. "Even if the evidence preponderates against the [Commissioner's] factual

findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

Here, the ALJ cited to substantial evidence from Dr. Holt's own treatment notes, as well as from Dr. Chu's treatment notes, that supports the ALJ's conclusion that Dr. Holt's stated exertional limitations were too restrictive. Specifically, the record reflects great improvement in Plaintiff's symptoms following her December 2017 fusion surgery, including Plaintiff's reports of eighty to ninety percent improvement from preoperative levels in February and April 2018, 0/10 pain in April 2018, and seventy percent improvement as late as August 2018. (See Doc. 10 at 499, 505, 560-62, 565, 591). When Plaintiff's August 2, 2018 examination suggested SI joint problems, Dr. Holt discussed the possibility of injections, and the record suggests that Plaintiff received bilateral SI joint injections in early September 2018 and had no lower back complaints at a physical later that month. (See id. at 591, 599, 625-27).

Indeed, the record reflects that Plaintiff was doing "quite well" until early 2019. (See id. at 631; see also id. at 605-07). Only in February 2019 did Plaintiff report increasing pain, beginning with her visit to Dr. Chu on February 19, 2019. (See id. at 618). However, Dr. Chu's notes from that date, and from prior dates of treatment, reflect that Plaintiff was in no acute

distress, her gait and station were grossly normal, and no neurological deficits were noted; moreover, Plaintiff was not taking her Gabapentin as prescribed. (See id. at 262, 578, 605, 618-19). Although Dr. Holt's physical examination of Plaintiff on February 28, 2019 yielded multiple positive findings, Plaintiff's x-rays showed the rod and screw device in good position, excellent bone graft in the posterolateral gutters, sclerosis in the SI joints, and slight degeneration above the level of her fusion. (See id. at 631). This was consistent with x-rays taken in 2018 - when Plaintiff reported eighty to ninety percent improvement from her preoperative level – which also showed the rod and screw device in good position, degenerative changes in the SI joints, and collapse or "slip" at L3-L4. (See id. at 560, 562).

In addition, the record does not document any impairments to Plaintiff's upper extremities that would place further limits on her abilities to lift or carry beyond those imposed by her lumbar impairments; indeed, multiple treatment notes from Dr. Chu's office reflect that Plaintiff moved all extremities well with full range of motion. (See id. at 262, 578, 618). Nor is there any objective evidence that Plaintiff had an abnormal or antalgic gait or required the use of any assistive device to ambulate.

Although Plaintiff has cited evidence in the record which she claims contradicts the ALJ's assessment of Dr. Holt's opinions, the relevant issue is whether the ALJ's assessment is supported by

25

substantial evidence.  See Figueroa v. Comm'r of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, at *15, 2017 WL 4992021, at *5 (M.D. Fla. Nov. 2, 2017).  The ALJ summarized the evidence in detail and provided specific reasons, supported by substantial evidence, for rejecting Dr. Holt's opinions regarding Plaintiff's exertional limitations.  While the record could possibly support a different finding, the Court cannot second guess the ALJ about the weight assigned to Dr. Holt's opinions when he articulated a specific justification based upon adequate reasoning.  See Hunter v. Soc. Sec. Admin., Comm'r, 808 F.3d 818, 823 (11th Cir. 2015).  This is particularly true given that the treatment records of both Dr. Holt and Dr. Chu provide substantial support for the ALJ's decision.

Plaintiff points out that the ALJ did not state the specific weight that was given to Dr. Holt's opinions regarding Plaintiff's sitting, standing, and walking limitations, or to Dr. Holt's implied opinion that Plaintiff would only be capable of working for six hours in an eight-hour workday.[4]  (Doc. 13 at 10).  However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," so long as the decision

---

[4] Dr. Holt did not specifically state that Plaintiff could only work for six hours in an eight-hour workday, but that opinion can be implied from Dr. Holt's statements that Plaintiff could sit for two hours, stand for two hours, and walk for two hours in an eight-hour workday.  (See Doc. 10 at 635).

"is not a broad rejection which is 'not enough to enable [the Court] to conclude that [the ALJ] considered [Plaintiff's] medical condition as a whole.'"   Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (citation omitted).  As reflected above, the ALJ did refer to Dr. Holt's opinions that "the claimant could only sit, stand and walk two hours in an eight-hour workday[,]" and he made clear that he found these exertional limitations to be unsupported by the evidence of record and explained the rationale for that finding.  (See Doc. 10 at 29).  Even if the ALJ erred in failing to explicitly assign weight to every aspect of Dr. Holt's medical source statement, such error was harmless because the ALJ's rejection of Dr. Holt's stated exertional limitations was based on substantial evidence.  See Newberry v. Comm'r, Soc. Sec. Admin., 572 F. App'x 671, 672 (11th Cir. 2014) (per curiam); Adams v. Comm'r, Soc. Sec. Admin., 586 F. App'x 531, 534 (11th Cir. 2014) (per curiam) ("[T]he ALJ did not err by failing to specifically address Adams's neurologist's opinion that she should avoid frequent overhead reaching, and that she needed to take 5-minute breaks every 45 minutes, as his written decision made clear that he considered both the neurologist's opinion and Adams's medical condition as a whole.").  Thus, the Court finds that the ALJ articulated good cause, supported by substantial evidence, to reject Dr. Holt's opinions regarding Plaintiff's exertional limitations.

***Whether the ALJ Properly Accorded Great Weight to the Opinions of Dr. Haas***

As noted, Dr. Haas, the State agency medical reviewer, opined that Plaintiff could perform work at the light exertional level, with some additional postural and environmental restrictions. (See Doc. 10 at 64-66); see also 20 C.F.R. § 404.1567(b) (defining "light work"); Social Security Ruling 83-10, 1983 SSR LEXIS 30, at *14, 1983 WL 31251, at *6 (S.S.A. 1983) (providing that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday"). In formulating his Physical RFC Assessment in March 2017, Dr. Haas relied on the available evidence in the record, including 2016 treatment notes from Dr. Chu's office, 2016 and January 2017 treatment notes from Dr. Holt's office, and surgical records for Plaintiff's January 2017 left L5-S1 revision laminotomy with discectomy. (See Doc. 10 at 65-66). Dr. Haas noted that x-rays showed anterolisthesis of the spine, which could reasonably be assumed to cause Plaintiff's alleged symptoms. (Id. at 66). He further noted that Plaintiff had a recurrent herniated nucleus pulposus, but that she appeared to be healing well after surgery and reported minimal pain. (Id.). He also noted that there was no indication of gait disturbance even prior to Plaintiff's revision surgery. (Id.).

Plaintiff argues that the ALJ erred in giving great weight to

Dr. Haas's opinions because Dr. Haas did not have a significant portion of the medical evidence available for review. (Doc. 13 at 17). Indeed, it appears that the most recent record reviewed by Dr. Haas was the record from Dr. Holt's January 31, 2017 post-surgical wound check, where Dr. Holt noted that Plaintiff reported feeling well with minimal pain. (See Doc. 10 at 66, 361). Plaintiff argues that there is "obviously more to the story[,]" and that subsequent medical evidence, including her December 2017 fusion surgery and Dr. Holt's most recent treatment notes, undermines the rationale behind Dr. Haas's assessment. (Doc. 13 at 18). The Commissioner counters that the timing of Dr. Haas's assessment is not determinative of the weight to be assigned to his opinions and contends that the ALJ properly assigned Dr. Haas's opinions great weight because they were consistent with the record as a whole. (Doc. 14 at 14). Because the Court concludes that Dr. Holt's stated exertional limitations were properly discounted by the ALJ, the ALJ could properly give the opinions of Dr. Haas, the non-examining medical reviewer, great weight so long as they were consistent with the medical record, including the objective medical evidence. See Flowers v. Comm'r of Soc. Sec., 441 F. App'x 735, 743 (11th Cir. 2011) (per curiam).

Plaintiff is correct that "there is more to the story" than that which was available to Dr. Haas, including Dr. Holt's findings of instability in x-rays taken after Plaintiff's January 2017

revision surgery, Dr. Holt's performance of a spinal fusion in December 2017, Plaintiff's reports of great improvement following her fusion, and Plaintiff's recent complaints of worsening symptoms. However, while the subsequent treatment record provides further insight and context as to Plaintiff's conditions, it does not conflict with Dr. Haas's opinion that Plaintiff can perform work at the light exertional level with additional postural and environmental restrictions.

For example, Dr. Haas cited June 2016 examination results from Dr. Chu's office indicating good movement of all extremities and normal gait and station, and he noted there was no indication of gait disturbance prior to Plaintiff's second surgery. (See Doc. 10 at 65-66). Importantly, all of Dr. Chu's subsequent records, including his most recent notes from February 2019, are consistent with those earlier findings cited by Dr. Haas. (See id. at 262, 578, 605, 618). Dr. Chu's notes from February 2019 also reflect that despite her alleged chronic lower back pain, her gait and station were normal, no neurological deficits were noted, and she was taking Gabapentin less frequently than prescribed. (See id. at 619).

In addition, a lumbar spine x-ray taken shortly before Plaintiff's fusion in December 2017 revealed no significant change from a previous study dated January 16, 2017, before Plaintiff's prior surgery. (See id. at 545). Plaintiff's December 2017 fusion

was performed without complication, and the record reflects that she did well for an extended period of time after that surgery. Moreover, the most recent imaging studies showed Plaintiff's rod and screw in good position and excellent bone graft in the posterolateral gutters.   While the studies showed some degeneration at adjacent levels, and Dr. Holt recorded a number of positive findings in his most recent physical examination, these alone do not demonstrate that Plaintiff is unable to perform the exertional requirements of light work, particularly when considered along with the evidence cited above that reflects otherwise.[5]

**Summary of the ALJ's Treatment of the Opinions of Dr. Holt and Dr. Haas**

In sum, the ALJ provided adequate reasoning for finding Dr. Holt's opinions regarding Plaintiff's exertional limitations to be overly restrictive.  It was therefore proper for the ALJ to accord Dr. Haas's opinion great weight, even though Dr. Haas was a non-examining physician, because Plaintiff's treatment records from both before and after the time Dr. Haas completed his assessment do not conflict with Dr. Haas's opinion that Plaintiff can perform

---

[5] To be sure, Dr. Holt's medical source statement, submitted two years after Dr. Haas's assessment, does conflict with Dr. Haas's conclusion that Plaintiff can perform the exertional requirements of light work.  However, as explained above, the ALJ rejected Dr. Holt's opinions regarding Plaintiff's exertional limitations and provided good cause for doing so.

light exertion with additional postural and environmental restrictions. Accordingly, Plaintiff's claim must fail.

> **B. Substantial evidence supports the ALJ's determination that Plaintiff's impairments do not meet or equal Listing 1.04A.**

Plaintiff further argues that the ALJ erred at step three of the sequential evaluation process in failing to find that her impairments meet or medically equal Listing 1.04A for disorders of the spine, and Plaintiff asserts that the ALJ's failure to specifically address Listing 1.04A and explain why its requirements were not met requires remand. (Doc. 13 at 16-17). The Commissioner counters that the ALJ properly considered Plaintiff's impairments at step three, and that the ALJ's implicit finding that Plaintiff's impairments do not meet or equal Listing 1.04A is supported by substantial evidence. (Doc. 14 at 9-13).

At step three, a claimant is conclusively presumed to be disabled if she meets or equals the level of severity of a listed impairment, or Listing. <u>Crayton v. Callahan</u>, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. § 404.1520(a)(4)(iii).

> To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. <u>See</u> 20 C.F.R. § 404.1525(a)-(d). To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." <u>See</u> 20 C.F.R. § 404.1526(a). If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments'

symptoms, signs, and laboratory findings to determine
whether the combination is medically equal to any listed
impairment. See id.

Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002).

When a claimant contends that she has an impairment meeting
or equaling a listed impairment, she "must present specific medical
findings that meet the various tests listed under the description
of the applicable impairment or . . . present medical evidence
which describes how the impairment has such an equivalency." Bell
v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986) (per curiam).
"Diagnosis of a listed impairment is not alone sufficient; the
record must contain corroborative medical evidence supported by
clinical and laboratory findings." Carnes v. Sullivan, 936 F.2d
1215, 1218 (11th Cir. 1991). "For a claimant to show that his
impairment matches a listing, it must meet *all* of the specified
medical criteria [for the Listing]. An impairment that manifests
only some of those criteria, no matter how severely, does not
qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis
in original). Further, the evidence must show that a qualifying
impairment "has lasted or be expected to last for a continuous
period of at least 12 months." 20 C.F.R. § 404.1525(c)(4). Thus,
the physical findings used to establish that the claimed impairment
meets or medically equals a listing must persist "over a period of
time . . . established by a record of ongoing management and
evaluation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00D.

33

An ALJ's finding that a claimant's impairments do not meet or equal a particular Listing can be implied.  Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986); Keane v. Comm'r of Soc. Sec., 205 F. App'x 748, 750 (11th Cir. 2006) (per curiam).  An ALJ's failure to expressly address whether a claimant meets a particular Listing is not error where substantial evidence in the record supports the conclusion that the claimant does not meet the Listing.  See Turberville ex rel. Rowell v. Astrue, 316 F. App'x 891, 893 (11th Cir. 2009) (per curiam); Barron v. Sullivan, 924 F.2d 227, 230 n.3 (11th Cir. 1991).

Here, the ALJ found at step three that Plaintiff's impairments, when considered individually and in combination, do not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Doc. 10 at 24).  The ALJ wrote:

> In making this finding, I have given particular [sic] to Sections 1.00 et seq., Musculoskeletal Disorders. Despite the claimant's combined impairments, the medical evidence does not document listing-level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.

(Id. at 25).

Plaintiff contends that various medical tests, procedures, and diagnoses described in the record support a finding that her lumbar spine impairments meet or medically equal the requirements of Listing 1.04A.  In light of this evidence, Plaintiff posits

34

that the ALJ's "cursory explanation" at step three was insufficient and requires remand.  (Doc. 13 at 16-17).

Listing 1.04A provides:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

"Accordingly, '[t]o meet Listing 1.04A, Plaintiff must establish (1) evidence of nerve root compression characterized by neuroanatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and (4) positive straight-leg raising test (sitting and supine).'" Cooper v. Comm'r of Soc. Sec., 2019 U.S. Dist. LEXIS 118190, at *8-9, 2019 WL 3097541, at *3 (M.D. Fla. June 28, 2019) (citation omitted), report and recommendation adopted, 2019 U.S. Dist. LEXIS 117094, 2019 WL 3082950 (M.D. Fla. July 15, 2019).  "[T]he medical criteria must be met for a period of twelve continuous months."

<u>Castro v. Astrue</u>, 2009 WL 1975513, at *4 (M.D. Fla. July 8, 2009).

There is no question that certain aspects of Plaintiff's treatment record satisfy particular facets of Listing 1.04A. Plaintiff points to record evidence of a herniated disc in her lumbar spine with nerve root compression, as well as neuro-anatomic distribution of pain and positive straight leg raising tests. However, while there is evidence in the record that certain criteria of Listing 1.04A are or may be met, Plaintiff has not met her burden of demonstrating the existence of *each* criterion.

Plaintiff does not cite, and the undersigned has not located, record evidence demonstrating "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss" for a period of twelve continuous months. During his initial examination of Plaintiff on November 17, 2016, Dr. Holt did state: "Her motor strength – she may have a little bit of weakness on the left especially on extension of the great toe and plantar flexion." (Doc. 10 at 368). And, at Plaintiff's next visit on December 1, 2016, Dr. Holt stated: "She does have some weakness now on plantar flexion. She is at about 4+/5 as compared to relatively normal strength originally." (<u>Id.</u> at 366). However, after Plaintiff's second surgery less than two months later, a physical examination at the hospital revealed that Plaintiff had full range of motion and bilateral strength, and her fine and gross motor function appeared to be intact. (<u>Id.</u> at 373). Dr. Holt

also noted that Plaintiff was intact neurologically after her second surgery, and during subsequent outpatient examinations as well. (See id. at 464, 499, 560, 562). Indeed, after December 1, 2016, Dr. Holt's records contain no findings of weakness. Dr. Chu also consistently noted the absence of focal neurological deficits, along with grossly normal gait and station and good movement of all extremities. (Id. at 262, 578, 605, 618). In addition, the Court has not located, and Plaintiff does not cite, any evidence of atrophy.

Moreover, although Plaintiff points to multiple positive straight leg raising or Lasegue tests, the test results do not specify whether the tests were conducted in sitting or supine positions. (See id. at 366, 368-69, 510, 631). Listing 1.04A requires positive straight leg raising tests from *both* the supine *and* sitting positions. See Cooper, 2019 U.S. Dist. LEXIS 118190, at *13, 2019 WL 3097541, at *5 (stating that a claimant must demonstrate positive sitting and supine straight leg raise tests to meet Listing 1.04A); Miller v. Astrue, 2011 U.S. Dist. LEXIS 46325, at *15-16, 2011 WL 1598731, at *5 (M.D. Fla. Apr. 28, 2011) (finding positive supine straight leg raise test accompanied by negative straight leg raise test in sitting position insufficient to satisfy Listing 1.04A). The law is clear that it is not sufficient to establish some of the criteria of a Listing. Plaintiff was required to establish all of the criteria. See

Sullivan, 493 U.S. at 530.  This Plaintiff has failed to do, and the evidence she relies upon is insufficient to demonstrate that she meets or equals the requirements of Listing 1.04A.

Although the ALJ did not explicitly reference Listing 1.04A in his decision, the undersigned concludes that the ALJ implicitly found that Plaintiff's impairments do not meet or medically equal Listing 1.04A.  First, the ALJ made clear that he had given particular consideration to the Listings found under Section 1.00 (Musculoskeletal Disorders), which include Listing 1.04, and he stated that "the medical evidence does not document listing-level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination."  (See Doc. 10 at 25).  Further, in his analysis relating to Plaintiff's RFC, the ALJ provided a detailed discussion of Plaintiff's treatment for lower back issues, the results of her lumbar spine MRIs, x-rays, and physical examinations, and other relevant medical and other evidence.  (See id. at 25-29).  Because the record evidence discussed in detail by the ALJ does not demonstrate the existence of all of the specified medical criteria for Listing 1.04A, substantial evidence supports the ALJ's implied finding that Plaintiff's impairments do not meet or equal the Listing.  Accordingly, Plaintiff has not met her burden and cannot prevail on this claim.

## VIII.    <u>Conclusion</u>

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits be **AFFIRMED.**

**DONE** this the **19th** day of **March, 2021.**

<u>                   /s/ SONJA F. BIVINS</u>
        **UNITED STATES MAGISTRATE JUDGE**